UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Action No. 5:16-cv-380-JMH |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER** |
| THOMAS NUGENT, | ) | |
| | ) | |
| Defendant. | ) | |

**\*\*\*\***

## I. INTRODUCTION

This case is best summed up by two common expressions: (1) nothing is certain except death and taxes, and (2) better late than never. These age-old sayings contain a wealth of wisdom. But as with all well-known adages, exceptions exist to the general rules.

Defendant presents a hodgepodge of arguments that he falls within the exceptions. If he does not, then Defendant will have to fork over nearly half a million dollars in purported unpaid income taxes. He argues that the Government has put forward inadmissible evidence, failed to produce the agreement at issue, incorrectly determined the amounted owed, and simply filed this lawsuit too late.

But the Government wants paid. So the United States has come to this Court seeking to reduce federal tax assessments against Thomas Nugent to judgment. [DE 1]. Nugent agrees he owes the government money. [DE 5, p. 1, ¶6; 17, p. 1 ¶4]. But the parties disagree over how much Nugent should pay. The difference is hundreds of thousands of dollars. The United States has moved for Summary Judgment. [DE 13]. Nugent has also moved for Summary Judgment or, in the alternative, Judgment on the Pleadings. [DE 12]

All Motions are now fully briefed and ripe for the Court's review. For the reasons stated herein, Nugent's Motion for Summary Judgment, or in the alternative, Judgment on the Pleadings is **DENIED**. The Government's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.**

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts are straightforward. A delegate of the Secretary of the Treasury made an assessment of $109,367 and $61,489 against Nugent on September 11, 2006 for unpaid federal income taxes for 2003 and 2004, respectively. [DE 1, p. 2, ¶5]. In 2008, a delegate also assessed $18,535, $24,760, and $16,066 against Nugent for unpaid taxes for 2005, 2006, and 2007, respectively. [*Id.*]. The Internal Revenue Service's ("IRS") account transcripts for Nugent indicate that it established an installment agreement on February

12, 2009. [DE 13-3 at 3]. The transcripts further reflect that Nugent made a series of monthly payments until November 19, 2010, when payment was dishonored. [*Id.*]. By July 11, 2011, the account transcripts stated that Nugent was "[n]o longer in installment agreement status." [*Id.* at 4].

The Government filed this lawsuit on October 5, 2016 to collect the assessments for unpaid federal income taxes made against Nugent for 2003, 2004, 2005, 2006, and 2007. [DE 1]. Nugent filed his Answer, admitting that he has tax liability for 2005, 2006, and 2007. [DE 5]. He asserts, however, that the Government's claim for unpaid taxes for 2003 and 2004 is time-barred. [*Id.*]. Because those claims are time-barred, Nugent further insists that the Government's total assessment of $496,499, plus penalties and interest, on October 3, 2016 is incorrect. [*Id.*]. On January 17, 2017, the Court held a hearing and set a truncated discovery period. [DE 7, 8]. The parties later filed the instant Motions.

As part of its Motion for Summary Judgment, the Government attached a declaration from Revenue Officer Glenda Granville in addition to Nugent's account transcripts. [DE 13]. Nugent filed Motions to Strike the Granville declaration and the transcripts. Specifically, Nugent argued the transcripts were not properly authenticated and thus inadmissible. [DE 16]. Nugent also argued

the transcripts were inadmissible on two theories: (1) under Rule 56(d) because he did not have an opportunity to depose Granville since the Government failed to turn over her information during discovery, and (2) under Rule 56(c)(4) because Granville's statements were not based on personal knowledge. [DE 15]. The Court rejected Nugent's arguments in a September 2017 Memorandum Opinion and Order. [DE 22]. In that Opinion, however, the Court reopened discovery to allow Nugent to depose Granville. [*Id*.]. Nugent later waived his right to depose Granville stating there "is no further need to take the deposition." [DE 23].

Presently before the Court are the parties' cross Motions for Summary Judgment and Nugent's Motion for Judgment on the Pleadings. Nugent has asked for Summary Judgment only on the 2003-2004 years because, he argues, the Government filed its lawsuit after the ten-year statute of limitations. The Government argues that an installment agreement with Nugent suspended the statute of limitations for thirty days, which gave the Government until October 11, 2016 to file this lawsuit. As to the 2005-2007 tax years, the Government has filed a Motion for Summary Judgment to which Nugent has responded, and the Government replied. The motions are now ripe for the Court's review.

### III. ANALYSIS

*A.    Standard of Review*

4

*(i) Judgment on the Pleadings*

"After the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Under such a motion "all well-pleaded material allegations of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). A Motion for Judgment on the Pleadings requires the same "standard of review employed for a motion to dismiss under Rule 12(b)(6)." *Florida Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 999 (6th Cir. 2015) (quoting *Tucker*, 539 F.3d at 549); *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's Complaint. A Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court views the Complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). A "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

*(ii) Summary Judgment*

Summary judgment is appropriate only when no genuine dispute as to any material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To prevail on summary judgment, the moving party must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 248 (1986). Thus, the Court considers "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251—52.

In considering a motion for summary judgment, the Court must construe the facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. After the moving party meets its burden of production, the nonmoving party must "go beyond the pleadings" through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*,

477 U.S. at 323-24. A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

### B.   *Procedures for Revenue Collection and the Presumption of Correctness*

Under 26 U.S.C. § 7402, "[t]he district courts of the United States at the instance of the United States shall have such jurisdiction . . . to render such judgment and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." *See also* 28 U.S.C. § 1340 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue.").  As a general matter, "[w]here the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun . . . within 10 years after the assessment of the tax."  26 U.S.C. § 6502(a)(1).

"A tax assessment is the Commissioner's administrative determination of the amount of taxes due." *See United States v. Fior D'Italia, Inc.,* 536 U.S. 238, 242 (2002). The purpose of an assessment is "to insure that a proper record is kept in order to avoid slipshod tax accounting practices and to insure that

taxpayers may receive a summary of tax records pertaining to their tax liability." *Gentry v. United States,* 962 F.2d 555, 556 (6th Cir. 1992)."

"It is well established in the tax law than an assessment is entitled to a legal presumption of correctness." *Fior D'Italia,* 536 U.S. at 242; *see also United States v. Walton*, 909 F.2d 915, 918 (6th Cir. 1990) ("The Commissioner's determination of a tax liability, if calculated according to an acceptable procedure . . . is presumptively correct"); *United States v. Rohner*, 634 F. App'x. 495, 499 (6th Cir. 2015) ("The IRS's tax assessments enjoy a legal presumption of correctness in civil cases."); *United States v. Hillman*, 60 F. App'x. 563, 564 (6th Cir. 2003); *United States v. Noble*, 3 F. App'x. 331, 334 (6th Cir. 2001). This presumption "help[s] the Government prove its case against a tax payer in court." *Fior D'Italia*, 536 U.S. at 242.

Once the Government establishes presumptive tax liability, the taxpayer challenging an assessment "carries the burden of proving the assessment wrong." *McDermitt v. United States*, 954 F.2d 1245, 1251 (6th Cir. 1992). "If an assessment is supported by a minimal evidentiary foundation, the burden of disproving it rests on the taxpayer." *Rohner*, 634 F. App'x. at 499; *see also United States v. Walton*, 909 F.2d 915, 918 (6th Cir. 1990) (placing "the burden of producing contrary evidence upon the taxpayer"); *Noble*,

3 F. App'x. at 334 (the "burden is on the taxpayer to produce evidence to the contrary.").

To meet this burden, "the taxpayer must show the determination to be incorrect or arbitrary." *Rohner*, 634 F. App'x. at 499. The defendant must "point to affirmative evidence that contradicts the Secretary's assessment of his tax liability." *United States v. Bogart*, No. 3:12-cv-0179, 2013 WL 5655953 at *3 (M.D. Tenn. Oct. 17, 2013). "Vague and general denials of an assessment's accuracy do not . . . establish a reasonable denial sufficient to shift the burden to the Government." *Rohner*, 634 F. App'x. at 499; *see also Walton*, 909 F.2d at 922; *Hammon*, 277 F. App'x. at 563.

### C. 2005-2007 Tax Years

The Government has made tax assessments against Nugent, and those assessments are presumptively valid. *See Fior D'Italia, Inc*., 536 U.S. at 242. The account transcripts detail the amount Nugent owes, the time period of the assessments, and identify Nugent as the taxpayer. [DE 13-3]. A declaration from a revenue officer explains those numbers. [DE 13-2]. Defendant himself admits he owes the government money, although he disputes the amounts. [DE 18, p. 4]. The Government has met the minimal evidentiary foundation that entitles it to a presumption of correctness. *Rohner*, 634 F. App'x at 499. Thus, Defendant bears the burden of rebutting the amounts of the Government's

assessments.  *See id.; see also Hammon,* 277 F. App'x at 563; *McDermitt*, 954 F.2d at 1251.

Other than general and vague denials, Nugent presents nothing to refute the Government's assessments.  Nugent instead focuses on excluding Granville's declaration and the transcripts, but the Court has already ruled that evidence is admissible.  [DE 22]. Nugent also argues that the government's own assessments show it can recover only $230,217 rather than the full $496,499 in the Government's petition.  [DE 18, p. 2].  Nugent is correct that the assessments amount to $230,217.  But Nugent fails to rebut–or even address–the fact that the Government made the assessments between nine and eleven years ago.  [DE 13-1, p. 1].  Over the last decade, while the Government awaited payment, interest and penalties accrued as the account transcripts indicate.  That interest and those penalties, when added to the original assessment amounts of $230,217, total $496,499.  [DE 13-3].  The general denial, without more, does not rebut the assessments nor raise a genuine issue of material fact.

Nugent also argues that the IRS sometimes gets assessments wrong, and thus *his* assessments might be wrong.  He attaches an affidavit from a former IRS and PricewaterhouseCoopers ("PWC") employee who has experience in "verification of additions to tax calculations as asserted by the Internal Revenue Service."  [DE

18-1].  The employee, Kathy Gale, states that during her time working for the IRS and PWC she found "a substantial number of the additions to tax calculations of the IRS are not accurate." [*Id.*, ¶3].  Gale does not claim to have knowledge about Defendant's case—including the records, agreements, and assessments at issue. Instead, Gale makes a blanket statement regarding her experience in different cases while working in a different location.  She presents only "vague and general denials" of the accuracy of IRS assessments in general, not "affirmative evidence" that "contradicts the Secretary's assessment" in Nugent's case. *Rohner*, 634 F. App'x at 499.

Beyond his denials and the Gale affidavit, Nugent does nothing to rebut or refute the Government's assessment amounts. He has presented no evidence that the amounts listed in the transcripts are incorrect.  Nugent engaged merely in the "vague and general denials" of the accuracy of the Government's assessment that does not rebut the presumption of correctness. *See Walton*, 909 F.2d at 922; *Rohner*, 634 F. App'x at 499; *Hammon*, 277 F. App'x. at 563.

In short, Nugent has not rebutted the Government's case with a scintilla of evidence.  As to the 2005-2007 tax years, there is no genuine dispute of material fact.  The government is entitled to judgment as a matter of law, and the Motion for Summary Judgment as to these years is **GRANTED**.

### D. 2003–2004 Tax Years

Whether the Government may collect the assessed amounts for the 2003-2004 tax years turns on one issue: did the Government timely file its lawsuit? If it did, its assessments can be reduced to judgment. But if the Government filed late, then Nugent does not have to pay. And whether the Government timely filed its lawsuit depends on the existence of an installment agreement.

Several key facts are not in dispute. First, there is no dispute that the Secretary assessed Nugent's 2003-2004 tax years on September 11, 2006. [DE 13-1, p. 1]. Second, no dispute exists that the statute of limitations gives the Government ten years to reduce assessments to judgment—which here would give the Government until September 11, 2016 to file this lawsuit. 26 U.S.C. § 6502(a). The parties also do not dispute that the termination of an installment agreement extends the statute of limitations for thirty days. 26 U.S.C. § 6331(k), (i). The parties agree that *if* a valid installment agreement existed, the Government had until October 11, 2016 to file this lawsuit. And finally, there is no dispute that the Government filed this lawsuit on October 5, 2016.

The dispute, then, is whether Nugent and the Government entered into an installment agreement that the Government later terminated, thereby extending the statute of limitations.

*(i)    Installment Agreements*

The Government may enter into written installment agreements with any taxpayer when the Secretary determines that such an agreement will result in full or partial collection of the taxpayer's outstanding tax liability.  26 U.S.C. § 6159; 26 C.F.R. § 301.6159-1(a).  An installment agreement must be in writing.  26 U.S.C. §6159(a); 26 C.F.R. § 301.6159-1(c)(2).  The written agreement must "take the form of a document signed by the taxpayer and the Commissioner or a written confirmation of an agreement entered into by the taxpayer and the Commissioner that is mailed or personally delivered to the taxpayer."  26 C.F.R. 301.6159-1(c)(2).  The IRS determines the procedures, form, and manner of installment agreement proposals.  26 C.F.R. § 301.6159-1(b)(1).  A proposal may result from letters, phone calls, e-mails or other communications; the proposal need not be in writing.  Internal Revenue Manual § 5.14.1.3.  An acceptance occurs when the IRS "notifies the taxpayer or the taxpayer's representative of the acceptance."  26 C.F.R. 301.6159-1(c)(1)(i).  If the Government accepts the taxpayer's request, the IRS sends a written confirmation of the agreement to the taxpayer.  26 C.F.R. 301.6159-1(c)(2).

The Secretary may terminate an installment agreement when collection of payments is in jeopardy.  26 U.S.C. § 6519(b)(2).

This suspends the ten-year statute of limitations for thirty days. 26 U.S.C. § 6331(k)(2)(D), (i)((5); 26 C.F.R. 301.6159-1(g).

Here, the Government argues that the account transcripts show it entered into an installment agreement with Nugent on February 12, 2009. [DE 13-1, p. 6]. That agreement terminated, the Government claims, on July 11, 2011, after Nugent stopped making regular payments. [*Id.*]. At that point, the Government argues, the ten-year statute of limitations under 26 U.S.C. § 6502(a) extended by thirty days, giving the Government until October 11, 2016 to file this lawsuit. [DE 13-1, pp. 6-7].

Nugent denies ever signing an installment agreement. In his sworn affidavit, Nugent claims that he did agree to pay the IRS, but that he never signed an installment agreement and never received confirmation of such an agreement. [DE 12-6]. Nugent's accountant, William Farmer, also provided an affidavit in which he states he discussed Nugent's case with IRS agents and the parties agreed to a "reduced levy payment" but *not* an installment agreement. [DE 12-7]. Nugent argues "no proof has been . . . entered into the record to prove that an Installment Agreement was in fact executed." [DE 12-1, p. 3].

Plaintiff has not produced the written installment agreement. The Government has also not produced a copy of the agreement or put forward testimony from anyone with knowledge of the agreement.

The Government cannot tell the Court the terms of the agreement, how it was entered, who signed it, or when it was delivered to Nugent. Still the Government argues it is entitled to a longstanding "presumption of regularity" that allows the Court to find the existence of the installment agreement by way of the account transcripts. [DE 13-1, p. 5]. The Court will now consider whether the presumption applies here.

*(ii)    Presumption of Regularity*

"The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem. Found. Inc.*, 272, U.S. 1, 14-15 (1926); *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996). The presumption is "less a rule of evidence than a general working principle." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). Once the presumption applies, "clear evidence is usually required to displace it." *Id.*

The presumption extends to IRS actions. *See U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) (ruling a "presumption of regularity attaches to the action of Government agencies."); *see also Randle v. United States,* No. CV 99-7992-CBM, 2000 WL 1739314, at *11 (C.D. Cal. Aug. 4, 2000); *Holtvogt v. United States*, 887 F. Supp. 994, 997 (S.D. Ohio 1995)("The Internal Revenue Service

enjoys a presumption of official regularity"). When the IRS conducts an official act pursuant to a particular policy, the court presumes it was properly done. *United States v. Ahrens*, 530 F.2d 761, 785 (8th Cir. 1976).

In *Ahrens*—a case the Government relies on here—the Eighth Circuit used the presumption of regularity to find that the IRS had sent a valid and proper notice of deficiency, even though the Government did not produce copies of the notice. *Id.* The Court found that because "[a]ll other steps in the notification process were properly accomplished," the presumption of regularity applied to "presume the validity of the contents of the statutory notice of deficiency." *Id.* at 786-87. Even though the Government failed to produce copies of the notice, the IRS did produce otherwise sufficient evidence that went "unrebutted by the taxpayer." *Id.* at 784. This included deposition testimony from the taxpayer's lawyer who stated he "was certain that he had received a notice of deficiency" about his client's taxes. *Id.* at 785. In addition, the Government introduced a letter, written by the taxpayer's attorney, in which he "specifically referred" to the notice. *Id.* Thus, in *Ahrens*, the Court did not rule that the Government could use the presumption for the existence of the document. Instead, the presumption of regularity established the "validity of the contents" of the document only *after* the Government introduced sufficient evidence that the notice existed. *Id.*

The Federal Circuit followed similar reasoning in *Welch v. United States*, 678 F.3d 1371 (Fed. Cir. 2012). There, the taxpayer argued that the IRS did not properly mail two notices of deficiency required to extend the statute of limitations. *Id*. at 1373. The Government could not produce the notices, but the Government had other evidence corroborating the existence of the notices. *Id.*

The *Welch* Court ruled that the IRS must first "establish[] the existence of a notice of deficiency" before the Court applied the presumption of regularity to the validity of the contents of the notice. *Id.* at 1377. But in "the absence of proof of a notice of deficiency" the IRS can meet its burden only with otherwise sufficient evidence. *Id*. The Court approvingly cited *Ahrens* as applying the presumption of regularity because "[o]nly the validity of the notice's contents" were in question since the Government had evidence proving "the existence of a deficiency notice." *Id*. at 1377-78. In other words, the Government fist must prove the existence of the document before the presumption applies to the contents and validity of the document. *Id*. at 1378. "Where the parties *dispute the existence of* the notice of deficiency itself, the *government bears the burden* of establishing . . . the existence of the notice." *Id*. at 1379 (citing *Ahrens*, 530 F.2d at 784-86)(emphasis added). The presumption of regularity "can be invoked to establish the validity of the notice's contents" but only where "the existence of a notice is not in dispute." *Id*.

"[T]he presumption does not extend to the existence of the notice." *Id*.

Using this framework, the Court ruled that the presumption of regularity did not apply when the "government has failed to demonstrate the existence" of the document in dispute. *Id*. at 1382. The Federal Circuit rejected the District Court's holding that the IRS can invoke the presumption "'by establishing that it followed a set procedure with respect to the taxpayers and providing corroborating documentation.'" *Id*. (quoting the District Court's opinion, *Welch v. United States*, 98 Fed. Cl. 655, 659(2011)). The Court was explicit: "[the District Court's] application of the presumption of official regularity is incorrect. In *Ahrens*, the presumption of official regularity was invoked with respect to the validity of the notice's contents, not to the issue of . . . whether the notice existed." *Id*.

Similarly, the Eleventh Circuit recently questioned whether a database entry gave rise to the presumption of regularity in *United States v. Hanks*, 569 F. App'x 785 (11th Cir. 2014)(per curiam). In *Hanks*, the taxpayer argued the IRS failed to properly send a termination regarding an installment agreement. *Id*. at 786. The IRS presented a database entry "purporting to memorialize the termination of the 2002 installment agreement." *Id.* The IRS argued that the database entry allowed the Court to invoke the

presumption of regularity that the IRS properly terminated the agreement. *Id*. at 787.

Echoing the reasoning in *Ahrens* and *Welch*, the Eleventh Circuit noted that the presumption of regularity applies "where the existence of the notice is not in dispute." *Id*. at 788. But when the Government fails to prove the document's existence, the presumption does not apply. *Id*. The Court "question[ed] whether a 'presumption of regularity'" controlled the case where the government relied merely on database entries "indicat[ing] . . . that the 2002 installment agreement was terminated." *Id*.

In short, the presumption of regularity applies once the Government satisfies its burden of proving the existence of the document at issue. *Welch*, 678 F.3d at 1379. In those instances, the Court may invoke the presumption of regularity as to the validity of the contents of the document and the procedures followed. *See Ahrens*, 530 F.2d 785-87. But the presumption does not always apply, and the burden does not always shift to the taxpayer, when the existence of the relevant document is in dispute. *Welch*, 678 F.3d at 1379.

The principles that animated *Ahrens, Welch,* and *Hanks* are similarly at play here. The Government argues "the presumption operates to allow this court to find that, absent evidence to the contrary, documentation in the Service's account transcripts

showing that the taxpayer entered into an installment agreement is sufficient to prove that the taxpayer entered into an agreement with the Service." [DE 13-1, p. 6]. In other words, the Government contends that its own database entries trigger the presumption that the installment agreement *existed* and shifts the burden to Nugent. But the presumption of regularity does not apply here to establish the existence of the installment agreement. *See Welch*, 678 F.3d at 1379. The Government may invoke the presumption only *after* bearing the burden of proving the existence of the agreements since the presumption "does not extend to the existence" of the agreement. *Id*.

The case on which the Government relies does not support its argument. *See Holtvogt v. United States*, 887 F. Supp. 994 (S.D. Ohio 1995). At issue in *Holtvogt* was only whether the Government had properly sent documents to the taxpayer. *Id*. at 997. The IRS presented evidence at trial indicating that the documents had been sent. *Id.* In addition, the IRS outlined particular procedures it regularly followed in sending the documents. *Id.* Finally, *Holtvogt* was a written *after* a full trial on the merits. *Id*. After *weighing* testimony and evidence, the Court found the IRS established it had sent the document at issue. *Id.*

Here, the issue is the existence of the installment agreement, not whether the IRS properly sent documentation. The Government

has also not described any procedures regarding entering information into the account transcripts either before or after an agreement is proposed, accepted, or finalized. *See, e.g.*, *Godfrey v. United States*, 997 F.2d 335, 338 (7th Cir. 1993)(holding that the presumption did not apply where the Government "failed to submit . . . an authoritative explanation of IRS procedures which could provide a presumption of regularity"). And in any event, this case sits at the summary judgment juncture where this Court will not weigh the evidence. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

While data entries on account transcripts do not trigger the presumption of regularity to prove the existence of the agreement, the transcripts do present circumstantial evidence for the Court to consider. If the transcripts do, in fact, establish the existence of the agreement, *then* the Court will apply the presumption of regularity to the *validity* of the agreement. Thus, the Court will now consider the transcripts as evidence in support of the Government's Motion.

*(iii) Genuine Issue of Material Fact*

To prevail in its Summary Judgment Motion on the 2003-2004 years, the Government must show there is no genuine dispute regarding the installment contract. To prove its case, the Government depends on two items of evidence: (1) the account transcripts, and (2) Revenue Officer Granville's declaration. [DE 13-2; 13-3]. Granville's knowledge of Nugent's case comes only from the transcripts; she was not personally involved in the creation of the agreement. [DE 13-2]. The revenue officer originally assigned to the case died. [*Id.*]. The Government presents no witness to tell us anything about the agreement. And the Government does not produce the original agreement, a copy of the agreement, or any evidence other than the transcripts.

Nugent, and Farmer, who represented Nugent before the IRS, state they never signed, or received a copy of, an installment agreement. [DE 12-6; 12-7]. Although the Government argues that Nugent merely denies *signing* and not in fact entering an installment agreement, the affidavits from Nugent and Farmer, taken together, amount to a denial of the agreement's existence since an agreement requires a proposal and acceptance, and it must in writing. *See* 26 U.S.C. §6159; 26 C.F.R. § 301.6159-1. The Government's only evidence that Nugent made a proposal comes from the data entries in the transcripts. The Government's argument, therefore, is that because the transcripts refer to the agreement, there must have been a proposal, acceptance, and a writing. But

Nugent and Farmer deny signing anything, deny receiving confirmation, and deny making such a proposal. In fact, Farmer claims he proposed and negotiated a levy payment that would "be within Mr. Nugent's ability to live" and not an installment agreement. [DE 12-7]. Farmer states he "never discussed or received an IRS Installment Agreement" with the IRS. [*Id.*]. Nugent swears that although he agreed to pay money to the IRS, it was not under an installment agreement. [DE 12-6]. The Government argues that Nugent's affidavit "is not dispositive of whether or not he entered into [an] installment agreement with the Service." [DE 13-1, p. 7]. True, but the Court must decide only whether the affidavits create a genuine issue of material fact not whether they are dispositive.

A District Court in the Southern District of New York recently faced a similar question. *See McConnell v. United States*, No. 15-CV-10164, 2017 WL 167917 (S.D.N.Y., Jan. 17, 2017). In *McConnell*, as here, the issue before the Court was whether an installment agreement existed that would have extended the statute of limitations. *Id.* at *3. The Government moved for summary judgment and used account records and a revenue officer's declaration to argue the agreement existed. *Id.* The taxpayer had no specific evidence to refute the Government's argument other than his own sworn statement that he never entered the agreement. *Id.*

Ruling that the "existence *vel non* of the installment agreement" was a genuine issue of material fact, the Court denied summary judgment. *Id*. at *4. The Court ruled that a factfinder could determine that the taxpayer did not execute an installment agreement despite the account records and officer's declaration. *Id.* And the Court rejected the Government's argument that the taxpayer could not "rely on his 'own self-serving statements' to defeat summary judgment." *Id*. at n.9. As the Court noted, "it is not clear what other evidence would exist to negate the Government's circumstantial evidence and to prove the non-existence of the installment agreement." *Id*.

In the absence of sworn statements denying the existence of an installment contract, courts have granted summary judgment for the Government. For example, the Seventh Circuit found no genuine issue of material fact where the taxpayer presented only an *unsworn* response to the Government's motion and "never denied under oath" the Government's claims regarding an installment agreement. *Seagrave v. United States*, 221 F. App'x 457, 459 (7th Cir. 2007). In fact, the taxpayer "never denied at all" the existence of an installment agreement. *Id*. Because the taxpayer never denied the Government's arguments, the Government won summary judgment. *Id*. But in *McConnell*, the Court found a genuine dispute of material fact even though the taxpayer offered no "evidence other than his

24

own affirmations in support of his position that he never executed an installment agreement." *McConnell*, 2017 WL 167917, at *3.

As there, so here. Nugent and his accountant have denied, under oath, the existence of the agreement. The reasoning in *Seagrave* does not apply since Nugent presents sworn statements. Farmer, the Enrolled Agent practicing before the IRS, says that he negotiated what he believed to be a "reduced levy payment" on Nugent's behalf. [DE 12-7, ¶3]. Farmer also states that he "never *discussed* or received an IRS Installment Agreement" with the IRS. [*Id.*, ¶5]. Thus, in Farmer's mind, he negotiated a payment, but specifically not an installment agreement. And Nugent claims in his affidavit that Farmer never presented him with an installment agreement to sign.

In short, the IRS argues that the data entries on Nugent's account transcripts create no genuine dispute that an installment agreement was proposed, accepted, reduced to writing, and either signed by Nugent or delivered to Nugent. 26 C.F.R. § 301.6159-1. Nugent and Farmer have denied, under oath, that these steps occurred.

The United States presents a credible, even persuasive, case. Indeed, the Government's argument is compelling and it very well could prevail at trial. The Government has produced evidence supporting its argument. But so too has Nugent. And although

Nugent's evidence consists solely of sworn affidavits denying the agreement, the Court does not know what else Nugent could do to prove a negative; that is, the non-existence of the agreement. *McConnell,* 2017 WL 167917, n.9. The "existence *vel non*" of the agreement is thus in dispute, and that fact is material. *Id*. at *4. And when both parties present evidence that amounts to a genuine dispute of material fact, the proper mechanism for resolution is trial, not summary judgment. *See Kennedy v. Silas Mason, Co.*, 334 U.S. 249, 256 (1944) ("while we might be able, on the present record to reach a conclusion that would decide the case, it might well be found later to be lacking in the thoroughness that should precede judgment of the importance and which is the purpose of the judicial process to provide."). Put simply, resolving the dispute before the Court would require fact finding and weighing of evidence, which the Court will not do here. *Anderson*, 477 U.S. at 249 (holding Courts do not weigh evidence at the summary judgment stage); *see also Coate v. Montgomery Cty., Ky.*, No. 99-6123, 2000 WL 1648131, at *2 (6th Cir. 2000)("if the running or tolling of the statute [of limitations] requires the adjudication of issues of fact, the motion [for summary judgment] should be denied."

Because a genuine dispute of material fact exists the Government's Motion for Summary Judgment as to the 2003-2004 tax years is **DENIED.**

*(iv) Nugent's Motion for Summary Judgment or Judgment on the Pleadings*

Nugent argues he is entitled to summary judgment because the Government has not produced the original or a copy of the installment agreement. "An original writing, recording, or photograph is required in order to prove its contents unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Under Rule 1004, an original writing is not required and secondary evidence may be used when "all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004(a). "[I]f failure to produce the original is satisfactory explained, secondary evidence is admissible." Fed. R. Evid. 1004, 1972 Advisory Committee Notes.

Under Rule 1004, the Government may use the account transcripts. The physical case file related to Nugent's taxes has been destroyed. [DE 13-1, p. 8]. The revenue officer originally assigned to Nugent's case has died, and the IRS has been unable to locate an electronic copy of the case history notes that the officer kept in the normal course of business. [*Id.*]. There is no evidence of bad faith on behalf of the Government, and the originals appear destroyed. The Government has also produced reliable secondary evidence of the installment agreement. Thus, Rule 1004(a) provides the exception to the general rule that the

original writing is required. *See Malkin v. United States*, 243
F.3d 120, 122-23 (2d Cir. 2001).

Because the Government has introduced reliable secondary
evidence on which a reasonable factfinder could find in the
Government's favor, Defendant's Motion for Summary Judgment or, in
the alternative, Judgment on the Pleadings is **DENIED**.

### IV. CONCLUSION

Accordingly, for the reasons stated here, **IT IS ORDERED AS
FOLLOWS**:

(1)  Plaintiff's Motion for Summary Judgment as to the 2005-
     2007 tax years [DE 13] is **GRANTED**;

(2)  Plaintiff's Motion for Summary Judgment as to the 2003-
     2004 tax years [DE 13] is **DENIED**;

(3)  Defendant's Motion for Summary Judgment or, in the
     alternative, Judgment on the Pleadings [DE 12] is
     **DENIED.**

This the 12th day of January, 2018.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge